**Laird E. SMELTZER, Plaintiff,**
v.
**DEERE AND COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 65–502.**

United States District Court
W. D. Pennsylvania.

March 25, 1966.

James P. Gill, of Spotts, Gill, Gavin & Morrow, Pittsburgh, Pa., for plaintiff.

Gary Sharlock, of Mercer & Buckley, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Plaintiff, Smeltzer, a citizen of Pennsylvania, brings this action against the defendant, Deere and Company, a Delaware corporation, alleging that in June, 1964, while operating a tractor near Ford

City, Pennsylvania, he sustained personal injuries as the result of a brake failure stemming from the defendant's negligence and "breach of the implied warranty of fitness" with respect to the manufacture of such tractor.

The defendant filed two motions to dismiss for lack of jurisdiction over the defendant foreign corporation. Each motion was accompanied by an affidavit of Robert L. Barrett, an attorney on the legal staff of the defendant. The record consists of these affidavits and depositions of Attorney Barrett and Wayne A. Hindman.

In our opinion the action should be dismissed and the service of process upon the defendant corporation quashed.

The plaintiff contends that this court has effectively acquired personal jurisdiction over the defendant corporation on the basis of one or both of two modes of service of process resorted to by him. The first, effectuated on May 18, 1965, consisted of personal service upon Wayne A. Hindman, president of Hindman Supply, Inc., at the latter company's place of business in Butler, Pennsylvania, in this district. The rationale of this first service appears to have been that since the Hindman corporation was a local dealer-distributor of Deere and Company products, Hindman was "an officer, a managing or general agent" of a "foreign corporation" (Deere and Company) within the meaning of Rule 4(d) (3), Fed.R.Civ. P., and/or "an agent or person for the time being in charge of" an "office or usual place of business" of Deere and Company. Rule 4(d) (7), Fed.R.Civ.P.; Rule 2180(a) (2), Penna.R.Civ.P., 12 P.S. Appendix.

Subsequently, hypothesizing that the defendant had in fact done and was doing business in Pennsylvania, even though not registered to do so, plaintiff had copies of the complaint and summons sent by certified mail to the Secretary of the Commonwealth and to the defendant, in accordance with the provisions of 15 Purdon's Pa.Stat.Ann. § 2852–1011, subd. B, and Rule 4(d) (7), Fed.R.Civ.P.

From the depositions and affidavits, we find the following facts:

(1) Deere and Company, the defendant, is incorporated under and by virtue of the laws of Delaware and has its principal place of business at Moline, Illinois. It is engaged in the manufacture and sale of agricultural machinery and implements and of motorized industrial equipment.

(2) The defendant sells all of its products to its wholly-owned John Deere sales subsidiary corporations, each of which is located in a different region of the United States and each of which organizes and has as its special responsibility the marketing and distribution of the defendant's products in territory comprising its designated regional sales territory.

(3) Each regional sales subsidiary in turn sells and distributes the defendant's products locally through a network of incorporated dealer-distributors such as Hindman Supply, Inc.

(4) The defendant's products are sold or leased to the ultimate users by the dealer-distributors. Occasionally, the regional sales subsidiaries may lease equipment to large-volume users.

(5) John Deere Company of Syracuse, Inc. (hereinafter referred to as Syracuse Deere) is the regional sales subsidiary whose sales territory covers the northern two-thirds of Pennsylvania, including the vicinity served by Hindman Supply, Inc. Syracuse Deere is incorporated under and by virtue of the laws of New York and has its principal place of business in Syracuse, New York. All of its common stock is owned by the defendant.

(6) There are nine men on the board of directors of Syracuse Deere. Four of them are also members of the board of directors of the defendant, in addition to being the defendant's chief executive officers. A fifth member of the board of Syracuse Deere is also contemporaneously an employee of the defendant.

(7) The active, day-to-day business of Syracuse Deere is conducted by its own officers and board of directors. Matters of general policy affecting the entire

**554**

Deere organization originate with the defendant.

(8) The defendant advertises its products in farm trade papers and magazines of national circulation, some of which are disseminated in Pennsylvania. Syracuse Deere and Hindman Supply also advertise defendant's products in Pennsylvania and in doing so employ the John Deere registered trademark.

(9) Extensions of credit to dealer-distributors and to some consumers are handled by Syracuse Deere and the other regional sales subsidiaries.

(10) Syracuse Deere regularly submits periodic sales reports and financial statements to the defendant.

(11) The books and financial records of Syracuse Deere are maintained at its separate offices in Syracuse, separate and apart from the books and financial records of the defendant.

(12) Syracuse Deere and the defendant each file separate federal and state income tax returns where applicable. Each pays its own operating expenses. Each maintains its own separate and distinct bank accounts. Each owns its own respective supplies, buildings and equipment. In sum, each maintains its own separate and distinct corporate existence.

(13) Defendant is not now and never has been licensed or registered to do business in Pennsylvania. The defendant has not done nor is it doing any business in Pennsylvania. The defendant has not entered Pennsylvania "for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts". 15 Purdon's Pa.Stat.Ann. § 2852–1011, subd. C.

(14) Syracuse Deere is concededly doing business in Pennsylvania.

(15) Hindman Supply, Inc. is incorporated under and by virtue of the laws of Delaware and has its principal and only place of business in Butler, Pennsylvania. Its voting stock is entirely owned by Syracuse Deere. Wayne A. Hindman is president and a member of the full-complement five-man board of directors of Hindman Supply. The other directors are high-level Syracuse Deere employees.

(16) Hindman Supply, Inc. purchases the defendant's machinery, implements and equipment from Syracuse Deere for resale and leasing to ultimate users in its assigned territory of "Butler and vicinity". It also services such machinery, implements and equipment. It has contractually agreed with Syracuse Deere that it will properly maintain sales and servicing in its assigned "Butler and vicinity" territory and that it will keep an adequate stock of spare parts.

(17) Some of the defendant's products are shipped directly from its factories to dealer-distributors, such as Hindman Supply, Inc., f. o. b. Moline, after such dealer-distributors have placed appropriate orders with their respective regional sales subsidiaries. The defendant bills the shipment to the regional sales subsidiary, such as Syracuse Deere, at the "factory" price and the regional sales subsidiary in turn bills the local dealer-distributor for the "wholesale" price plus freight charges.

(18) Syracuse Deere and the other regional sales subsidiaries, rather than the defendant, handle all the detailed accounting and record keeping associated with the sale and leasing of the defendant's products in their respective regions, as well as the keeping of records pertaining to the activities of the local dealer distributors.

(19) Hindman Supply, Inc. renders complete monthly financial accounts to Syracuse Deere.

(20) The defendant does not intrude in the overall supervision of the local dealer-distributors. Such supervision is regarded and strictly treated as the province of its regional sales subsidiaries.

(21) The contract between Syracuse Deere and its wholly-owned subsidiary, Hindman Supply, purports to bind Syracuse Deere not to "fire" Wayne A. Hindman as the president of Hindman Supply.

Such contract does not prohibit Hindman Supply from dealing with the defendant's competitors. Approximately 90% of Hindman Supply's gross sales volume is attributable to sales of the defendant's products. Hindman Supply is not the alter ego of Syracuse Deere.

(22) Express product warranties are extended to Hindman Supply and like dealer-distributors by Syracuse Deere and the other regional sales subsidiaries, which the dealer-distributors in turn extend to the ultimate purchasers and lessees. No such warranties are extended by the defendant.

(23) The defendant has no denominated office or place of business in Pennsylvania.

(24) The defendant has not authorized nor appointed anyone in Pennsylvania to act as its agent for service of process.

(25) None of defendant's factories are located in Pennsylvania.

(26) Neither Hindman Supply, Inc. nor Wayne A. Hindman is or has been at any relevant time an officer, managing agent, general agent or employee of the defendant. The defendant and Syracuse Deere have maintained their separate corporate identities and integrities. Syracuse Deere is not the alter ego of the defendant; it is not and has not been an agent of the defendant; it is not and has not been a mere instrumentality of the defendant; nor has it been utilized by the defendant to accomplish any illegal, fraudulent or dishonest purpose.

## DISCUSSION

The issue presented is whether the defendant foreign corporation is present or is doing business in Pennsylvania so as to be subject to the jurisdiction of this court in this action.[1] The first question involved in determining jurisdiction was plainly enunciated in Partin v. Michaels Art Bronze Co., 202 F.2d 541 (3d Cir. 1953). It is: "[W]hether the State, here Pennsylvania, has, through legislation plus the judicial application thereof, asserted jurisdiction over the defendant." Id., p. 542. The pertinent Pennsylvania Act (15 Purdon's Pa.Stat.Ann. § 2852–1011, subd. C) specifies that "the entry" of a foreign corporation into Pennsylvania "for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose, with the intention of thereby initiating a series of such acts, shall constitute 'doing business.' "[2]

The burden of proving these jurisdictional facts is, of course, on the plaintiff, KVOS, Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 81 L.Ed. 183 (1936), and in our opinion he has failed. We hold that the defendant has not made an entry into Pennsylvania by agent or otherwise for the doing of any act or acts specified in the aforesaid statute which constitute "doing business".

Only if the activities of the defendant's wholly-owned sales subsidiary, Syracuse Deere, are imputed to it, can the defendant be said to be doing business in Pennsylvania.

In Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), decided on remarkably similar facts, it was held that such imputation is improper despite the identity of interests and the parent's exercise of control over the subsidiary, so long as "the corporate separation, though perhaps merely formal" is "real". Id., p. 337, 45 S.Ct. p. 251. Seemingly, *Cannon* would not prevent a state legislature from specifically declaring an intent that the

---

1. No contention has been made that the suit is not an "action arising within this Commonwealth" within the intendment of 15 Purdon's Pa.Stat.Ann. § 2852–1011, subd. B, and it seems clear that it is. Since we do not know on this record when, where or from whom plaintiff purchased the offending tractor, it cannot be determined when and where plaintiff's breach of warranty claim accrued. Plaintiff's counsel stated (Tr., p. 17): "I don't think Hindman sold this [the tractor]. This was sold through another dealer * * *."

2. Cf. Restatement, Conflict of Laws, § 167, comment (a).

activities of a wholly-owned sales subsidiary in the chain of distribution are to be imputed to the parent corporation for the purpose of determining whether the parent-manufacturer is subject to the jurisdiction of the state court.

No doubt the Pennsylvania Legislature could, as was done by the Florida Legislature,[3] amend the Business Corporation Act so as to include in the term "doing business" the marketing activities of wholly-owned subsidiary corporations, such as the John Deere sales subsidiary corporations. See: Deere & Co. v. Watts, 148 So.2d 529 (Fla.App.1963). That, however, is not the circumstance here. Pennsylvania has not enacted into law the equivalent of the Florida statute.

We believe that the Pennsylvania Supreme Court, faced with the identical question involved here, would again hold determinative Cannon Mfg. Co. v. Cudahy Packing Co., supra, as it did in Botwinick v. Credit Exchange, Inc., 419 Pa. 65, 213 A.2d 349 (1965). The continuing vitality of Cannon seems to be accepted by other courts. Howell v. Kennecott Copper Corporation, 21 F.R.D. 222, f. n. 4 (E.D.Pa.1957), aff'd 258 F.2d 946 (3d Cir. 1958); Electrosonics International, Inc. v. Wurlitzer Company, 234 F.Supp. 913 (E.D.Pa.1964); United Steelworkers of America v. Copperweld Steel Co., 230 F.Supp. 383 (W.D.Pa.1964); Technograph Printed Circuits, Ltd. v. Epsco, Incorporated, 224 F.Supp. 260 (E.D.Pa. 1963); Steiner v. Dauphin Corporation, 208 F.Supp. 104 (E.D.Pa.1962); Hendricks v. Alcoa Steamship Co., 203 F. Supp. 33 (E.D.Pa.1962); Farr's, Inc. v. National Shoes, Inc., 191 F.Supp. 803 (E. D.Pa.1960); Fitzgerald v. Hilton Hotels Corporation, 183 F.Supp. 342 (E.D.Pa. 1960). See also, 18 A.L.R.2d pp. 193 et seq. The Pennsylvania Supreme Court in its Botwinick opinion cited favorably three of the foregoing authorities.

Our view that the activities of Syracuse Deere cannot be imputed to Deere and Company for the purpose of determining whether the parent corporation has done or is doing business in Pennsylvania finds support in decisions from other jurisdictions. See: Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400 (1st Cir. 1965); Blount v. Peerless Chemicals (P.R.) Inc., 316 F.2d 695 (2d Cir. 1963); Blitzstein v. Ford Motor Company, 288 F.2d 738, 741 f. n. 11 (5th Cir. 1961); Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 269 F.2d 600 (4th Cir. 1959); Harris v. Deere and Company, 223 F.2d 161 (4th Cir. 1955), aff'g 128 F.Supp. 799 (E.D.N.C.1955); Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., 193 F.2d 158 (9th Cir. 1951); Berkman v. Ann Lewis Shops, Inc., 142 F.Supp. 417, 422 (S.D.N.Y.1956), aff'd 246 F.2d 44 (2d Cir. 1957).

We cannot agree with plaintiff that this court validly acquired personal jurisdiction over the defendant by the personal service effected upon Wayne A. Hindman at Hindman Supply, Inc., on May 18, 1965. The uncontroverted facts indicate that neither Wayne A. Hindman nor Hindman Supply was at any relevant time an officer, managing agent or general agent of the defendant or an agent of defendant authorized by appointment or by law to receive service of process within the meaning of Rule 4(d) (3), Fed.R.Civ.P. The implicit condition precedent to the application of that Rule—that Deere and Company be *subject* to service of process in this forum—has not been satisfied. So, too, the facts indicate that Hindman Supply, Inc. was not an office or usual place of business of Deere and Company within the meaning of Rule 2180, Penna.R.Civ.P.; that Wayne A. Hindman was not at any pertinent time an executive officer of Deere and Company or an agent or person for the time being in charge of any office or usual place of business of Deere and Company or an agent of Deere and Company authorized by appointment or by

3. Seemingly the Florida Legislature followed the suggestions contained in the opinions of the District and Circuit Courts in Berkman v. Ann Lewis Shops, Inc., 142 F.Supp. 417, at p. 422 (S.D.N.Y.1956), 246 F.2d 44, at p. 49 (2d Cir. 1957).

statute to receive service of process on its behalf within the meaning of Rule 2180, Penna.R.Civ.P.; and that, in any event, Deere and Company is not *subject* to service of process in Pennsylvania.

An appropriate order will be entered.